UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER MARTINA BELL | § |
| | § |
| | § |
| Plaintiff, | § |
| | § CIVIL ACTION NO. 4:11-cv-02085 |
| VS. | § |
| | § |
| BANK OF AMERICA | § |
| HOME LOAN SERVICING LP, *et al.*, | § |
| | § |
| Defendants. | § |
| | § |
| | § |

---

**MEMORANDUM AND ORDER**

---

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim and Brief in Support ("Motion"). (Doc. No. 36.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED.**

**I. BACKGROUND**

For the purposes of this Memorandum and Order only, we assume Plaintiff's allegations to be true. This lawsuit arises out of a foreclosure dispute. Jennifer Martina Bell ("Plaintiff" or "Bell") is the owner of property located in Houston, Texas (the "Property"). (Doc. No. 35, Second Am. Compl. ¶ 16.) Plaintiff purchased the Property in November 2005. (*Id.* ¶ 18.) At the time of the purchase, Plaintiff sought financing from Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.*) The original loan was

1

contracted under an Adjustable Rate Mortgage ("ARM"). (*Id.* ¶ 20.) Plaintiff paid her mortgage regularly until Hurricane Ike damaged her home in September 2008. (*Id.* ¶ 19.) To repair the damage, Plaintiff had to pay $15,000 for repairs before she was reimbursed by her insurance company. (*Id.*) After Hurricane Ike, Plaintiff's mortgage interest rate increased from 8% to 10.85%. (*Id.* ¶ 20.) To make matters worse, Wilshire Credit Corporation ("Wilshire"), the alleged mortgagee at the time, escrowed Plaintiff's loan and purchased exorbitant hazard insurance on the Property. (*Id.*) As a consequence, Plaintiff's monthly mortgage payments increased from $1,400 per month to almost $3,000 per month. (*Id.* ¶ 21.)

In October 2009, Plaintiff called Wilshire to complain about the increase in her loan payments. (*Id.* ¶ 22.) Wilshire offered to forbear any foreclosure until Plaintiff's loan was modified, and mailed Plaintiff Home Affordable Modification ("HAMP") documents. (*Id.*) Plaintiff filled out the modification documents, agreed to HAMP's terms and conditions, and sent the paperwork back to Wilshire. (*Id.* ¶ 23.) The modification agreement required that Plaintiff pay the sum of $2,605.73 through the trial period. (*Id.*) Plaintiff began making these payments on a regular basis.

In February 2010, Bank of America ("Defendant") "came into the picture." (*Id.* ¶ 24.) According to Plaintiff, "[i]t is not clear how Bank of America acquired the ownership or servicing of the loan" or "acquired title as the owner of the loan." (*Id.*) Defendant "ignored all agreements between Wilshire and Plaintiff." (*Id.* ¶ 25.) In November 2010, Plaintiff faxed the modification agreement documents to Defendant because Defendant claimed it had no notice or substantive documentation to prove both the forbearance and the modification agreement. (*Id.*) Defendant agreed to stop all

foreclosure actions on Plaintiff's property until it could ascertain the veracity of Plaintiff's claim that her loan was under a forbearance and modification agreement. (*Id.* ¶ 26.) Defendant also stated that it would assign an officer to handle Plaintiff's loan documents, although to date it has not done so. (*Id.* ¶ 26-27.)

Plaintiff continued to send payments to Defendant pending the final determination of the actual modification of the loan. (*Id.* ¶ 28.) Defendant rejected all payments made by Plaintiff, however, and returned all checks to her. (*Id.*) Although Plaintiff has made every effort to pay her mortgage since November 2010, her overtures have been rejected by Defendant. (*Id.* ¶ 29.) Plaintiff filed this lawsuit against Defendant alleging breach of contract, promissory estoppel, suit to quiet title, and violation of the Texas Fair Debt Collection Act ("TDCA"). Plaintiff also contends that Defendant has no standing to foreclose on Plaintiff's Property, and seeks declaratory judgment. After Plaintiff filed her Second Amended Complaint, Defendant filed the pending Motion, seeking to dismiss all claims against it.

## II. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

**III. ANALYSIS**

The Court concludes that all of Plaintiff's claims against Defendant must be dismissed for failure to state a claim.

**A. Breach of Contract**

Plaintiff insists that the deed of trust signed by MERS and Plaintiff (the "Deed of Trust") constituted a valid contract. (Second Am. Compl. ¶ 31.) Plaintiff further alleges that she performed according to the terms of the contract by tendering her mortgage payments as agreed in the loan modification agreement ("Trial Period Plan") and the

4

forbearance letter ("Forbearance Agreement"). (*Id.*) Further, Plaintiff avers, Defendant breached the contract by rejecting the Forbearance Agreement and commencing foreclosure of the home, causing damage to Plaintiff. (*Id.*) Defendant points out that it is unclear whether Plaintiff is claiming the Deed of Trust was breached, or rather the Trial Period Plan and Forbearance Agreement were breached. (Doc. No. 36, Mot. Dismiss 4-5.) Regardless, Defendant contends, Plaintiff's claim for breach of contract fails under either theory.

First, Defendant argues that it did not breach the Deed of Trust because Plaintiff defaulted on the original loan. Plaintiff does not address this argument directly; rather, she appears to argue that Defendant breached the original loan agreement because Defendant has produced no evidence of possession of the Note. (Doc. No. 37, Resp. to Mot. Dismiss ¶ 15.) Plaintiff does not plead these facts in her Second Amended Complaint in support of her breach of contract claim; therefore, the Court cannot consider them here. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). If the Court were to consider these additional factual allegations, however, they would actually undermine Plaintiff's argument for breach of contract. To prevail on a breach of contract claim, Plaintiff must establish that: (1) a valid contract existed between Plaintiff and Defendant; (2) Plaintiff tendered performance or was excused from doing so; (3) Defendant breached the terms of the contract; and (4) Plaintiff sustained damages as a result of Defendant's breach. *Oliver v. Hill*, No. 01–10–00475–CV, 2011 WL 5026401, at *2 (Tex.App.-Houston [1st Dist.] Oct. 20, 2011) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.-Houstonn [1st Dist.] 2001, no pet.)). "'A breach occurs when a party fails or refuses to do something he has promised to do.'" *Id.*

(quoting *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex.App.-Houston [1st Dist.] 2003, no pet.)). As Plaintiff alleges that no valid contract existed between Plaintiff and Defendant, Plaintiff's claim for breach of contract would fail.

Furthermore, any claim for breach of the underlying loan agreement cannot survive the Motion to Dismiss because Plaintiff failed to tender performance. "To prove an action for breach of contract, a plaintiff must establish it performed, tendered performance of, or was excused from performing its contractual obligations." *Camping Roofing Ltd. v. Park Side Villas I, LLC*, No. 10–10–00417–CV, 2011 WL 5829558, at *2 (Tex.App.-Waco Nov. 2, 2011) (citing *Carr v. Norstok Bldg Sys., Inc.*, 767 S.W.2d 936, 939 (Tex.App.-Beaumonnt 1989, no writ); *Acme Pest Control Co. v. Youngman*, 216 S.W.2d 259, 263 (Tex.Civ.App.-Waco 1948, no writ)). Plaintiff does not plead facts showing that she paid the amounts necessary to bring her loan current. Therefore, Plaintiff cannot state a claim for breach of the underlying loan agreement.

Nor can Plaintiff state a claim that Defendant breached the Forbearance Agreement or the Trial Period Plan. The Forbearance Agreement expired in October 2009, months before Defendant "came into the picture" in February 2010. (Doc. No. 35-1, Ex. A to Second Am. Compl., Forbearance Agreement ¶ 2; Second Am. Compl. ¶ 24.) Likewise, the Trial Period Plan terminated in April 2010; the actions Plaintiff complains of, however, started in November 2010. (Doc. No. 35-2, Ex. B to Second Am. Compl., Trial Period Plan ¶ 2; Second Am. Compl. ¶¶ 25-30.) Therefore, Plaintiff cannot state a claim for breach of the Forbearance Agreement or the Trial Period Plan.

### B. Standing to Foreclose

Plaintiff asserts that Defendant has no standing to foreclose on the Note or under the Deed of Trust because Defendant is not the holder of the Note or the Deed of Trust. (Second Am. Compl. ¶ 32.) Instead, Plaintiff claims, Defendant is merely the servicer of the Note. (*Id.* ¶ 34.) Plaintiff insists that Defendant has provided no evidence that it is the holder of the Note signed by Plaintiff conferring the right to foreclose under the Deed of Trust. Plaintiff states that if a promissory note is separated from the deed of trust, the promissory note becomes unsecured. (*Id.* ¶ 40 (quoting Restatement (3rd) of Property (Mortgages) § 5.4 cmt. E (1997)).) According to Plaintiff, "[a] person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it." (*Id.*) Plaintiff points out that Defendant "is not listed on both the Note and Deed of Trust as the Lender for the purposes of right to foreclose on the loan." (*Id.*) Citing to articles from the Houston Chronicle explaining that MERS has jeopardized the clear title of Texas homeowners, Plaintiff also alleges MERS has no way of proving the title ownership of any of the properties it allegedly mortgaged. (*Id.* ¶¶ 40-43.)

As Defendant points out, however, Defendant has standing to foreclose on the Note under Texas law. The Texas Property Code provides that "a mortgage servicer may administer the foreclosure of property." Tex. Prop. Code Ann. § 51.0025 (Vernon 2007). A mortgage servicer is not necessarily the holder of the original note. *Broyles v. Chase Home Finance*, No. 3:10–CV–2256–G, 2011 WL 1428904, at *3 (N.D. Tex. April 13, 2011) (citing Tex. Prop. Code Ann. § 51.0001(3), (4) (defining a mortgagee as, among other things, "holder of a security instrument," and stating that a "mortgagee may be a mortgage servicer")). "The Property Code, therefore, contemplates that someone other

than the holder of the original note—for example, a mortgage servicer who is not the mortgagee—may lawfully foreclose on the security interest." *Id.* (citing *Athey v. Mortgage Electronic Registration Systems, Inc.*, 314 S.W.3d 161, 166 (Tex.App.-Eastland 2010)). *See also Valdez v. Federal Home Loan Mortg. Corp.*, No. 3:11–cv–1363, 2011 WL 7068386, at *3 (N.D. Tex. Nov. 28, 2011) ("[U]nder Texas law, Wells Fargo, as the mortgage servicer, was not required to be the owner or holder of the Note in order to have the right to foreclose."); *Wells v. BAC Home Loans Servicing, L.P.*, No. W–10–CA–00350, 2011 WL 2163987, at *3 (W.D. Tex. April 26, 2011) ("Under Texas law, a mortgage servicer can foreclose under a deed of trust, regardless of whether it is a holder…. Nothing requires the mortgage servicer to possess the original promissory note." (internal citations omitted)). Plaintiff's "split the note" theory is also unavailing. *See, e.g.*, *Cannon v. JP Morgan Chase Bank, N.A.*, No. 4:11–CV–458, 2011 WL 6838615, at *5 (E.D. Tex. Nov. 16, 2011) ("[A] transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions…. In short, there is no merit to Plaintiffs' argument that the Deed of Trust and Note were split, rending any attempted foreclosure defective." (quotations and citations omitted)); *Defrancheschi v. Wells Fargo Bank, N.A.*, No. 4:10–CV–455–Y, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011); *Eskridge v. Federal Home Loan Mortg. Corp.*, No. W–10–CA–285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011). Therefore, Plaintiff's attack on Defendant's lack of standing is without merit.

### C. Promissory Estoppel

Plaintiff alleges that Defendant and Wilshire made a promise to her that her mortgage would not be foreclosed and that her loan would be modified according to HAMP guidelines. (Second Am. Compl. ¶ 44.) According to Plaintiff, she relied on that promise by making payments throughout the trial period. (*Id.*) That reliance "was to her detriment when [Defendant] informed Plaintiff that the agreement between Plaintiff and Wilshire would not be honored by [Defendant]." (*Id.*) As Plaintiff's mortgage payments were rejected by Defendant, Defendant commenced to foreclose on Plaintiff's Property. (*Id.*)

Defendant argues that Plaintiff cannot state a claim for promissory estoppel. (Mot. Dismiss 10.) If Plaintiff means that the promise is premised on the Forbearance Agreement or the Trial Period Plan, Defendant contends, it is implausible on its face because neither agreement contains any such promise. (*Id.*) Alternatively, if Plaintiff is referring to an oral promise, the claim is barred by the statute of frauds. (*Id.*) In response, Plaintiff contends that she is not referring to an oral promise. (Resp. to Mot. Dismiss ¶ 38.) Rather, Plaintiff insists, her claim is based on the contracts between Plaintiff and Wilshire. (*Id.*) To state a claim for promissory estoppel, Plaintiff must plead facts showing (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by Plaintiff to her detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002). Therefore, promissory estoppel is a claim for relief "available to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex.App.-Corpus Christi 2001).

The Forbearance Agreement and Trial Period Plan contain no promise to Plaintiff that her mortgage would not be foreclosed upon or that her loan would be modified. The Forbearance Agreement states only that Wilshire "will refrain from initiating foreclosure proceedings or stay any pending foreclosure proceedings on the Loan from July 1, 2009 to October 1, 2009." (Forbearance Agreement ¶ 2.) Furthermore, the Forbearance Agreement provides: "The Loan will not necessarily be reinstated by entering into this Agreement and/or by making the payments hereunder. The payments required in this agreement to postpone foreclosure proceedings may not be sufficient to satisfy the regular monthly payments required by the loan documents. Therefore it is likely that you still will be in default after you make all payments required by this Agreement." (*Id.* ¶ 5.) The Trial Period Plan also clearly states that it "is not a modification of the Loan Documents and … the Loan Documents will not be modified unless and until (i) [Plaintiff] meet[s] all of the conditions required for modification, (ii) [Plaintiff] receive[s] a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed." (Trial Period Plan ¶ 2.) In signing the Trial Period Plan, Plaintiff also agreed "that the Servicer will not be obligated or bound to make any modification of the Loan Documents if [Plaintiff] fail[s] to meet any one of the requirements under" the Plan. (*Id.*) Plaintiff also points to a letter about the Home Affordable Modification Trial Period Plan; however, this letter merely provides that Plaintiff "will be notified once we have determined [Plaintiff's] eligibility for a permanent loan modification." (Doc. No. 37-3, Ex. C to Resp. to Mot. Dismiss, Important Message About Your Home Affordable Modification Trial Period Plan Dated 8/30/2010 ¶ 2.)

Further, Plaintiff has pleaded sufficient facts to state a claim for detrimental reliance. To show detrimental reliance, Plaintiff must show that she materially changed her position in reliance on the promise. *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex.App.-Houston [14th Dist.] 2007). Continuing payment was a pre-existing obligation, and therefore does not amount to detrimental reliance. *Cade v. BAC Home Loans Servicing, LP*, No. H–10–4224, 2011 WL 2470733, at *5 (S.D. Tex. June 20, 2011). As a consequence, Plaintiff's promissory estoppel claim fails.

### D. Suit to Quiet Title

Plaintiff alleges that "Defendant placed a cloud on the title to Plaintiff's property by its assumption of Plaintiff's mortgage and claiming it is conferred the right to foreclose." (Second Am. Compl. ¶ 47.) According to Plaintiff, "Defendant has not proven it is the true owner and holder of the Note and Deed of Trust associated with Plaintiff's mortgage." (*Id.*) Therefore, Plaintiff concludes, "[b]ecause Defendant has not proven it is entitled to foreclose on the Note, Defendant has illegally encumbered and clouded Plaintiff's title to her home." (*Id.*) Defendant insists that Plaintiff's claim must fail because Plaintiff fails to plead facts showing that the Deed of Trust itself is invalid. (Mot. Dismiss 13.) Defendant also contends that Plaintiff has both title to and possession of the Property; therefore, the proper remedy to remove a cloud of title is the trespass-to-title statute. (*Id.* 13-14.) Furthermore, according to Defendant, even if Defendant lacked standing to foreclose, Plaintiff would not be entitled to the relief she seeks because she executed the very lien on the property that she is attempting to void. (*Id.* 14.) In response, Plaintiff asserts that she "stands by her action for Suit to Quiet Title" and insists that

11

"Trespass to Title is not the correct cause of action in this case." (Resp. to Mot. Dismiss ¶ 43.)

"A suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex.App.-Houston [1st Dist.] 2011) (citing *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex.App.-San Antonio 2009, pet. denied)). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Id.* "An action to remove a cloud from title exists to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of a better right." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex.App.-Houston [1st Dist.] 2009) (quotations omitted). "In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Id.*

The elements of the claim for relief to quiet title are (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat. Bank Ass'n v. Johnson*, No. 01–10–00837–CV, 2011 WL 6938507, at *3 (Tex.App.-Houston [1st Dist.] Dec. 30, 2011) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex.App.-Texarkana 1991, writ denied); *Best Inv. Co. v. Parkhill*, 429 S.W.2d 531, 534 (Tex.Civ.App.-Corpus Christi 1968, writ dism'd); 17 William V. Dorsaneo III et al., Texas Litigation Guide § 257.02[1] (2004)). "To quiet title in his favor, the plaintiff 'must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference.'" *Wells v. BAC Home*

12

*Loans Servicing, L.P.*, No. W–10–CA–00350, 2011 WL 2163987, at *4 (W.D. Tex. April 26, 2011) (quoting *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex.App.-Beaumont 2000, pet. denied)). "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex.App.-Corpus Christi 2001) (citing *Alkas v.United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e)).

Plaintiff's suit to quiet title is based on the fact that, "[b]ecause Defendant has not proven it is entitled to foreclose on the Note, defendant has illegally encumbered and clouded Plaintiff's title to her home." (Second Am. Compl. ¶ 47.) As explained above, however, Defendant is not required under Texas law to prove "it is the true owner and holder of the Note and Deed of Trust associated with Plaintiff's mortgage" in order to foreclose. (*Id.*) Furthermore, Plaintiff does not assert a superior title, and alleges no facts to support a superior claim. Therefore, Plaintiff's claim for suit to quiet title does not survive the Motion to Dismiss. *See Swim v. Bank of Am., N.A.*, No. 3:11–CV–1240–M, 2012 WL 170758 (N.D. Tex. Jan. 20, 2012) ("[I]n a quiet title action, Plaintiffs must prove and recover on the strength of their own title, not the weakness of Freddie Mac's title. Plaintiffs do not allege facts that would permit them to recover on the strength of their own title, and cannot demonstrate an invalid charge against the title… As discussed above, Plaintiffs cannot prevail on their wrongful foreclosure theory based upon the splitting of the Note and Deed of Trust."); *Valdez*, 2011 WL 7068386, at *3 (finding that plaintiff's claim for suit to quiet title did not survive the motion to dismiss because "under Texas law, Wells Fargo, as the mortgage servicer, was not required to be the owner or holder of the Note in order to have the right to foreclose"); *Alford v. Wells*

*Fargo Bank, N.A.*, No. 4:10–CV–603, 2011 WL 2728339, at *4 (E.D. Tex. June 14, 2011) (dismissing suit to quiet title because Plaintiff did not assert a superior title); *Wells*, 2011 WL 2163987, at *4 ("The Complaint contains no factual allegations whatsoever regarding the strength of Wells's title to the property. It focuses entirely on the weaknesses of any adversary's title. Therefore, because of the dearth of factual allegations, Wells has failed to state a claim to quiet title."); *Eskridge*, 2011 WL 2163989, at *5 (dismissing Plaintiff's claim for quiet title because her argument that she has superior title—because the Note and Deed of Trust were "split"—had no merit).

### E. Violation of the Texas Fair Debt Collection Act

Plaintiff alleges that Defendant violated the TDCA § 392.303(4) "by failing to disclose clearly in any communication with Plaintiff the name of the person or entity to whom the debt has been assigned or is owed when making a demand for money." (Second Am. Compl. ¶ 51.) Defendant insists that Plaintiff's TDCA claim must fail because the provision pleaded is expressly inapplicable to servicing or collecting real property mortgage loans. (Mot. Dismiss 14.) Plaintiff responds by stating that she "stands by her cause of action under TDCA." (Resp. to Mot. Dismiss ¶ 45.) Presumably, Plaintiff refers not to Tex. Fin. Code § 392.303(4) but rather § 392.304(a)(4), which provides: "Except as otherwise provided in this section in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices," including "failing to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money." Tex. Fin. Code § 392.304(a)(4). Yet § 392.304(b) provides that "[s]ubsection (a)(4) does not apply

to a person servicing or collecting real property first lien mortgage loans or credit card debts." *Id.* § 392.304(a)(4). Therefore, Plaintiff's claim under the TDCA must be dismissed.

### F. Declaratory Judgment

When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The Declaratory Judgment Act is a procedural device that creates no substantive rights; rather, it requires the existence of a justiciable controversy. *Fankhauser v. Fannie Mae*, No. 4:10cv274, 2011 WL 5600395, at *10 (E.D. Tex. Oct. 24, 2011) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984)). In a declaratory judgment action, "[b]ased on the facts alleged, there must be a substantial and continuing controversy between two adverse parties." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citing *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)). As explained above, Plaintiff has alleged no facts that would lead to the conclusion that a present controversy exists between Plaintiff and Defendant. Therefore, Plaintiff's request for declaratory judgment must be denied.

### IV. CONCLUSION

In any litigation involving a home, the Court is always sensitive to the enormous financial and emotional stakes to the homeowner. Still, this Court cannot discount or rewrite laws or precedents—no matter how sympathetic the life circumstances. For the

reasons explained above, Defendant's Motion is **GRANTED.** Plaintiff's claims are

**DISMISSED** with prejudice.[1]

   **IT IS SO ORDERED.**

   **SIGNED** at Houston, Texas on this the 21st day of February, 2012.

         _____

         **KEITH P. ELLISON**
         **UNITED STATES DISTRICT COURT JUDGE**

---

[1] The style of the case also lists MERS as a Defendant. As all of Plaintiff's allegations concern actions by Bank of America, Plaintiff has failed to state a claim against MERS. The Motion to Dismiss was filed on behalf of Bank of America and BAC Home Loans Servicing, LP only. (Mot. Dismiss 13.) Representation was not entered for MERS. Furthermore, Plaintiff does not list MERS as a defendant in the body of her Second Amended Complaint. Therefore, Plaintiff's claims against MERS are dismissed without prejudice.